IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LARRY DAVID HISER,                )
                                  )
                Plaintiff,        )
                                  )
        v.                        )  Civil Action No. 11-836
                                  )
MICHAEL J. ASTRUE,                )
COMMISSIONER OF                   )
SOCIAL SECURITY,                  )
                                  )
                Defendant.        )

MEMORANDUM JUDGMENT ORDER

AND NOW, this _____ day of September, 2012, upon due
consideration of the parties' cross-motions for summary judgment
pursuant to plaintiff's request for review of the decision of the
Commissioner of Social Security ("Commissioner") denying
plaintiff's applications for disability insurance benefits and
supplemental security income under Titles II and XVI,
respectively, of the Social Security Act ("Act"), IT IS ORDERED
that the Commissioner's motion for summary judgment (Document No.
10) be, and the same hereby is, granted and plaintiff's motion for
summary judgment (Document No. 9) be, and the same hereby is,
denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an
obligation to weigh all of the facts and evidence of record and
may reject or discount any evidence if the ALJ explains the
reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d
Cir. 1999). Where the ALJ's findings of fact are supported by

substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending applications[1] for benefits on August 8, 2008, alleging a disability onset date of June 8, 2008, due to ruptured discs in his neck, pain and numbness in both hands. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on February 24, 2010, at which plaintiff, represented by counsel, appeared and testified. On April 21, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On April 26, 2011, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 38 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c) and 416.963(c). He has a high school education and has past relevant work experience as a carpenter, but he has not engaged in any substantial gainful activity since his alleged onset date.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and has acquired sufficient quarters of coverage to remain insured only through December 31, 2012.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that while plaintiff suffers from the severe impairment of residuals from two spinal surgeries,[2] the medical evidence does not show that plaintiff's impairment meets or medically equals the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform a range of light work but with numerous restrictions recognizing the limiting effects of plaintiff's impairment.[3]  Taking into account these limiting effects, a vocational expert identified ticket taker as a category of light job which plaintiff can perform based upon his age, education, work experience and residual functional capacity. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform his past relevant work, he is capable of making an adjustment to jobs existing in significant

---

[2]    On August 22, 2008, plaintiff underwent a C3-C7 posterior cervical laminoplasty and a left C6-C7 laminoforaminotomy and discectomy after an MRI and CT myelogram had shown cervical stenosis with symptoms of myelopathy.    On January 14, 2009, after an MRI indicated a post-surgical residual amount of herniation at C6-C7 causing mild left-sided or foraminal stenosis, plaintiff underwent an anterior cervical discectomy and fusion C6-C7.    (R. 13).

[3]  Specifically, plaintiff requires a sit/stand option; can perform all postural movements occasionally, except cannot climb ladders, ropes or scaffolds; cannot do push/pull movements or overhead lifting or reaching with the non-dominant, left upper extremity; should generally be able to look straight ahead at the work task without frequent or repetitive head or neck movements; and should not be exposed to temperature extremes, wet or humid conditions, or hazards.    (R. 14).

numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[4] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises numerous challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ erred

---

[4] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

at step 3 by finding that plaintiff's impairment does not meet or equal Listing 1.04A; (2) the ALJ improperly evaluated the medical evidence and failed to give controlling weight to the opinions of his treating physicians; (3) the ALJ improperly evaluated plaintiff's credibility; and, (4) the ALJ erred at step 5 by failing to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT)" and also by failing to account for all of plaintiff's limitations in his residual functional capacity finding. In addition, plaintiff has raised an allegation of bias on the part of the ALJ due to an alleged conflict of interest. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence. The court also finds no merit to plaintiff's bias claim.

First, the court is satisfied that the ALJ's step 3 finding is supported by substantial evidence. At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

Here, the ALJ found that plaintiff suffers from the severe impairment of residuals stemming from two surgeries, the first of which treated cervical stenosis with symptoms of myelopathy and the second of which addressed a post-surgical residual amount of herniation at C6-C7 which was causing mild left-sided or foraminal stenosis and weakness in plaintiff's triceps.

The ALJ properly identified Listing 1.04A as the corresponding Listing for plaintiff's impairment and adequately explained in his decision why plaintiff's impairment does not meet or equal the severity of that Listing.[5] (R. 13); see Burnett, 220 F.3d at 120, n.2. In particular, the ALJ noted that plaintiff "has failed to establish any continuous 12 month period since [his alleged onset date] during which his cervical spine impairment has been attended by clinical findings that satisfy the requirements of Section 1.04A ...." (R. 14).

The ALJ then set forth the objective medical evidence supporting his finding. (Id.). Specifically, the ALJ noted that plaintiff provided no clinical evidence of any stenosis present since the second of his two surgeries. He further noted that the reports of Dr. France, who examined plaintiff on April 14, 2009,

---

[5] The criteria for meeting Listing 1.04A are as follows: Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

three months after plaintiff's second surgery, found some triceps weakness but no accompanying sensory or reflex loss, and that examinations conducted by Dr. Lee during the period from August of 2009 to December of 2009 showed no measurable or significant muscle weakness. (R. 14).

Plaintiff disputes the ALJ's interpretation of the medical reports of Dr. France, arguing that there is "no comment or assertion" in those medical records indicating that plaintiff's impairment has been "conclusively repaired or corrected" nor indicating that "plaintiff has been cured as the ALJ concluded." He also suggests that the absence of objective findings following his second surgery actually is an indication that his doctors "needed no further testing to confirm what they had already established as the nature of [plaintiff's] impairments and each impairment's continued level of severity." Finally, plaintiff takes issue with the ALJ's failure to consider plaintiff's testimony as to continuing symptoms following the surgeries in determining whether plaintiff meets Listing 1.04A. The court finds none of these arguments persuasive.

First, contrary to plaintiff's assertion, the ALJ did <u>not</u> conclude that plaintiff's spinal impairment has been "cured" or "conclusively repaired or corrected." Rather, the ALJ determined at step 3 that plaintiff did not establish through clinical findings that his spinal impairment was of listing-level severity, *i.e.*, that it was severe enough to prevent an individual from doing <u>any</u> gainful activity (20 C.F.R. §§404.1525(a) and

🖎AO 72
(Rev. 8/82)

416.925(a)), for a continuous period of at least twelve months, as required by the regulations. See 20 C.F.R. §§404.1525(c)(4) and 416.925(c)(4)("Most of the listed impairments are permanent or expected to result in death ... [f]or all [listings that do not state a specific time period], the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months.") As already discussed, this finding is supported by the objective medical evidence. Moreover, plaintiff's insinuation that the ALJ had concluded that plaintiff has been "cured" further is belied by the ALJ's step 5 residual functional capacity finding, which made numerous accommodations recognizing the ongoing limitations arising from plaintiff's impairment.

There also is no merit to plaintiff's argument that no additional clinical findings were necessary to establish that plaintiff met Listing 1.04A after his surgeries because, he alleges, his doctors "already established" the nature of his impairments and "each impairment's continued level of severity." The regulations expressly recognize that "[m]usculoskeletal impairments frequently improve with time or respond to treatment. Therefore, a longitudinal clinical record is generally important for the assessment of severity and the expected duration of an impairment ...." Appendix 1, §§1.00.H; see also 1.00.I.1 ("medical treatment (including surgical treatment) must be considered in terms of its effectiveness in ameliorating the signs, symptoms, and laboratory abnormalities of the disorder").

Here, the longitudinal clinical record establishes that plaintiff's spinal disorder improved after surgical treatment as evidenced by the treatment notes and examination reports of both Dr. France and Dr. Lee. Accordingly, the absence of any objective clinical evidence showing any remaining stenosis after plaintiff's second surgery was significant to show that plaintiff's impairment had improved at least to a point where it did not meet the criteria of Listing 1.04A, and the ALJ rightly recognized the lack of such evidence in support of his step 3 finding.

Finally, plaintiff's contention that the ALJ erred in failing to consider plaintiff's testimony at step 3 is incorrect. Step 3 concerns the medical severity of plaintiff's impairment and each listing "specif[ies] the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§404.1525(c)(3) and 416.925(c)(3). Accordingly, it was plaintiff's burden to present medical findings equal in severity to the relevant listed impairment. See Sullivan v. Zebley, 493 U.S. 521, 531 (1990). He did not do so. The court is satisfied that the ALJ's step 3 finding is in accordance with the applicable regulations and that it is supported by substantial evidence.

Plaintiff's second argument is that the ALJ improperly evaluated the medical evidence. Specifically, he contends that the ALJ improperly gave more credence to a report from the state agency consultative examiner, who opined that plaintiff could perform a range of light work, rather than to a treating physician, Dr. Pellegrini, who indicated on a state welfare form

that plaintiff was "temporarily disabled." Plaintiff also suggests that the treatment notes and findings from Dr. France and Dr. Lee establish that plaintiff's impairment has been continuous for a period of twelve months and that their findings should have been given controlling weight. The court has reviewed the record and is satisfied that the ALJ properly evaluated the medical evidence in accordance with the applicable standards.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. When a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. It is clear that he considered all of the relevant medical evidence and provided a detailed analysis of that evidence, setting forth sufficient explanations as to why he rejected or discounted any such evidence. (R. 15-

18). In particular, the ALJ exhaustively addressed the treatment records of Dr. France and Dr. Lee, plaintiff's treating physicians for his spinal impairment. (R. 16-17). The court finds no error in the ALJ's analysis.

Plaintiff's specific objections to the ALJ's evaluation of the medical evidence are unpersuasive. First, the court finds no error in the ALJ's analysis of the opinion of Dr. Pellegrini that plaintiff was "temporarily disabled" from June 12, 2008, to July 1, 2009, which was set forth in a letter to the welfare department dated December 11, 2008. (R. 203). Although he inadvertently attributed it to Dr. France, the ALJ nevertheless expressly addressed this opinion in his decision and explained why he rejected it. Specifically, he pointed out that the opinion, which was rendered prior to plaintiff's second surgery on January 14, 2009, was not supported by the subsequent reports from plaintiff's treating physicians, which established that plaintiff had regained the ability to perform a limited range of light work within a one-year period from plaintiff's alleged onset date.[6] (R. 18). The ALJ then referenced specific reports from Dr. France supporting his conclusion, including a statement dated February 23, 2010, in which Dr. France indicates that he would put "no formal restrictions" on plaintiff's ability to work. (R. 19).

---

[6] As the ALJ also correctly noted, whether a plaintiff is disabled is a determination reserved to the Commissioner, and the opinion of a physician, treating or otherwise, on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(e) & 416.927(e); SSR 96-5p.

Plaintiff alleges that the ALJ misinterpreted the findings of Dr. France, in particular the statement that Dr. France would put "no formal restrictions" on plaintiff's ability to work. Plaintiff contends that the ALJ ignored the context of Dr. France's statement and the additional statement that plaintiff's ability to work is to be based on his "symptoms and functional limitations." According to plaintiff, Dr. France thus "leav[es] it to the patient to ascertain what he can or cannot do."

The court finds nothing unreasonable in the ALJ's interpretation of Dr. France's report. First, Dr. France twice was given the opportunity to state his opinion on plaintiff's functional limitations arising from his impairment. (R. 281-285; 346-352). On both occasions he declined to place any formal restrictions on plaintiff's ability to work and the ALJ reasonably concluded from those statements that any restrictions on plaintiff's ability to work therefore would not be dependent on any objective medical reason, but solely upon plaintiff's subjective tolerances and symptoms. Plaintiff even acknowledges in his reply brief that while it is Dr. France's practice not to place limitations on what his patients can or cannot do, that practice "exclud[es] presumably some activity that could damage or undo the orthopedic recovery process." Accordingly, if there had been objective medical reasons for limiting plaintiff's activity, it is reasonable to assume that Dr. France would have included those limitations in his medical source statement and would not "leave them to the patient."

Furthermore, the ALJ's residual functional capacity finding is fully in accord with Dr. France's assessment in that the ALJ actually did place limitations on plaintiff's ability to work based upon plaintiff's subjective symptoms insofar as those limitations are supported by the objective medical evidence. The court is satisfied that the ALJ's evaluation of Dr. France's assessment is supported by substantial evidence.

Finally, the court finds no merit to plaintiff's argument that the ALJ erred in accepting the opinion of the state agency reviewing physician that plaintiff can perform a limited range of light work. Pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(f)(2)(i) and 416.927(f)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(f)(2)(ii) and 416.927(f)(2)(ii); SSR 96-6p. Here, the ALJ expressly evaluated the report of the state agency reviewer under the appropriate regulations and his evaluation is supported by substantial evidence.[7] (R. 18)

Plaintiff next contends that the ALJ's credibility determination is not supported by substantial evidence.

---

[7] Significantly, the court notes that the ALJ, "resolving all doubts in [plaintiff's] favor," actually incorporated additional limitations beyond those suggested by the state agency reviewer. (R. 18).

Specifically, plaintiff alleges that the ALJ scoured the medical records to find "snippets" supporting an adverse credibility finding while ignoring plaintiff's testimony as to his pain.

The court finds no error in the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations. As required, in assessing plaintiff's credibility the ALJ considered plaintiff's subjective complaints, but also considered those complaints in light of the medical evidence and all of the other evidence of record. 20 C.F.R. §§404.1529(c) and 416.929(c); see also SSR 96-7p. Based on his review of all of the evidence, the ALJ found that plaintiff was not entirely credible and "seem[ed] to be exaggerating his symptoms." (R. 15).

The ALJ did a thorough job in his decision explaining why plaintiff's allegations of disabling subjective symptoms are not supported by the record, and, in particular the objective medical findings. (R. 15). Based upon that evidence, the ALJ found plaintiff to be not entirely credible as to his symptoms and limitations. The ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and the court is satisfied that it is.

It also is important to note that while the ALJ did not find plaintiff's subjective complaints entirely credible, his decision makes clear that, to the extent plaintiff's allegations as to the

AO 72
(Rev. 8/82)

limitations arising from his impairment are supported by the medical and other evidence, the ALJ accommodated those limitations in his residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

Plaintiff next challenges the ALJ's step 5 finding that there is other work existing in the national economy which plaintiff can perform. Specifically, plaintiff alleges that the ALJ failed to resolve an "inconsistency" between the vocational expert's testimony that plaintiff can perform the job of ticket taker and the description of the ticket taker job in the Dictionary of Occupational Titles ("DOT"). He further contends that the ALJ's hypothetical to the vocational expert failed to incorporate an additional limitation that plaintiff would be required to miss more than four days of work per month due to pain, which would preclude plaintiff from performing any jobs.

At step 5 of the sequential evaluation process, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with his medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(f) and 416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform a limited range of light work with certain restrictions accommodating the medically-supportable limitations arising from plaintiff's impairment. (R. 14). In response to the ALJ's hypothetical involving an individual of plaintiff's age, education, work experience and residual functional capacity for light work with the enumerated limitations, the vocational expert identified a ticket taker as representative of the type of light jobs that such an individual would be able to perform. The vocational expert's testimony constitutes substantial evidence supporting the ALJ's step 5 finding that jobs exist in significant numbers in the national economy that plaintiff can perform.

Plaintiff, however, contends that he cannot perform the job of ticket taker identified by the vocational expert as it is described in the DOT at 344.667-010 based on a lack of manual dexterity resulting from paresthesias in his hands. Accordingly, plaintiff contends that this case must be remanded to the ALJ to resolve this conflict in accordance with SSR 00-4p.[8]

---

[8] SSR 00-4p requires an ALJ to identify, and obtain a reasonable explanation for, any conflict between occupational evidence provided by a vocational expert and information contained in the DOT and also to explain in his decision how any conflict that has been identified was resolved. In particular, the Third Circuit Court of Appeals has interpreted SSR 00-4p to require that "the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT," and, if the testimony does appear to conflict with the DOT, the ruling directs the ALJ "'to elicit a reasonable explanation for the conflict.'" Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002). "The Ruling requires that the explanation be made on the record and that the ALJ explain in his decision how the conflict was resolved." Id.

Plaintiff raised this identical argument in a post-hearing brief to the ALJ. The ALJ considered plaintiff's argument but found it to be without merit because the "record fails to establish an objective basis for [plaintiff's] alleged manipulative limitation." (R. 20). The ALJ then identified the specific medical reports upon which he relied in reaching that conclusion and in particular noted that Dr. France reported no specific objective findings related to numbness of the hand, that Dr. Lee did not report any grip strength weakness and that neither doctor referred plaintiff for any diagnostic studies related to these complaints. (R. 20). Thus, contrary to plaintiff's assertion that the ALJ ignored plaintiff's complaints regarding pain and numbness in his hands, the ALJ expressly considered those complaints but found them to be unsupported by the objective medical evidence. The court believes that the ALJ's finding in this regard is supported by substantial evidence as outlined in the decision.

As there was no objective medical basis for incorporating any additional limitation relating to manual dexterity into the ALJ's residual functional capacity finding, there was no conflict between the vocational expert's testimony that plaintiff can perform the job of ticket taker and the description of that job in the DOT. Accordingly, the vocational expert's testimony constitutes substantial evidence supporting the ALJ's step 5 finding that jobs exist in the national economy that plaintiff can perform.

Finally, the court finds no merit to plaintiff's contention that the ALJ improperly rejected the vocational expert's response to a hypothetical requiring plaintiff to miss more than four days of work per month due to pain. A hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984). Here, the additional limitation requiring plaintiff to miss work at a frequency of 4 or more days per month is supported neither by the objective medical evidence nor by plaintiff's reported daily activities. Accordingly, the ALJ did not err in rejecting the vocational expert's response to a hypothetical posited by plaintiff's attorney incorporating such limitations. See Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004) (ALJ has authority to disregard vocational expert's response to hypothetical inconsistent with evidence).

Plaintiff's final argument alleges bias against the ALJ based upon a purported "conflict of interest." In support of this argument, plaintiff has submitted an affidavit in which, *inter alia*, he alleges that: (1) he believes that in 2003 or 2004, as an employee of either Culton Construction, Inc., or Crown Construction, Inc., that he worked on a construction project at the ALJ's home; (2) that he believes that a member of Crown Construction and a director of Culton Construction are relatives of the ALJ; (3) that at the time of the hearing before the ALJ he was pursuing a worker's compensation claim against Culton Construction as a result of injuries sustained in a fall at a

Culton Construction worksite; and, (4) that his pending application for social security benefits was based upon injuries he sustained in the same fall while working for Culton Construction.

It long has been established that due process requires that social security claimants be afforded a full and fair hearing. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Essential to a fair social security hearing is the right to an unbiased judge who fulfills his duty to develop a full and fair record. Id. An ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify. Schweiker v. McClure, 456 U.S. 188, 195 (1982). The burden to establish a disqualifying interest rests with the party asserting bias. Id. at 196. A party asserting bias must show that the behavior of the ALJ was "so extreme as to display clear inability to render fair judgment." Liteky v. United States, 510 U.S. 540, 551 (1994).

As an initial matter, the court notes that plaintiff's affidavit containing his allegations of a conflict of interest are not a part of the administrative record in this case and are not properly before this court on substantial evidence review. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) (holding that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence). Although plaintiff alleges in his affidavit that "since the hearing he had not been able to dispel a feeling that he had met [the ALJ] prior to the hearing," he failed to raise this concern

to the Appeals Council, despite the fact that his request for review was pending before the Appeals Council for well over a year.[9]

In any event, the court does not believe that the self-serving statements set forth in the affidavit, which appear to be based on nothing but sheer speculation, are sufficient to overcome the presumption that an ALJ is unbiased. Contrary to plaintiff's assertion that once he raised the claim of bias it became the Commissioner's obligation to proffer evidence to refute it, as already noted, the burden to establish a disqualifying interest rests with the party asserting bias. Schweiker, 456 at 195. Here, plaintiff has offered nothing to support any of his averments. Instead he simply makes the accusation that he "believes" he may have worked on the ALJ's house and that he "believes" that the ALJ may be related to one or more of his former employers.[10] The court cannot find that mere self-serving declarations such as these are in and of themselves sufficient to raise a bias claim.

---

[9] The ALJ's decision is dated April 21, 2010. The Appeals Council did not deny his request for review until April 26, 2011. In addition, plaintiff's hearing was held February 24, 2010. If plaintiff had a "feeling" since that time that he had met the ALJ before, he had 14 months to bring the matter to the attention of his attorney and the Appeals Council.

[10] Plaintiff contends that his beliefs are "more than 'insinuations'" and offers as support the fact that the companies for whom he worked are a part of the record and that the principals of these companies can be confirmed through the West Virginia Department of State's Online Data Services. However, plaintiff has offered nothing beyond sheer speculation to show that he worked on a project at the ALJ's home in 2003 or 2004 nor that the ALJ is related to any of his employers, the averments which are at the very heart of his bias claim.

Moreover, there is nothing that the ALJ said at the hearing which suggests that the ALJ prevented plaintiff from receiving a full and fair hearing or otherwise that the ALJ was unable to render a fair judgment. There is no indication that the ALJ failed to fully develop the record, that he questioned plaintiff in a coercive manner or that he interfered with the introduction of evidence concerning plaintiff's claim.

Although plaintiff avers that he was "surprised and somewhat overwhelmed" by the nature of the ALJ's questions at the hearing, and in particular the ALJ's inquiry as to whether plaintiff was receiving worker's compensation benefits and the question: "is the deal here that you're never going to do anything the rest of your life?," the court finds nothing improper in the ALJ's questions. As the government aptly notes, ALJ's frequently inquire as to whether a worker's compensation claim has been filed because if the claimant is entitled to social security disability insurance benefits under Title II of the Act, the regulations require the Commissioner to offset the worker's compensation benefits against the Title II benefits. 20 C.F.R. §404.408. Moreover, it has been held in this circuit that it is not improper for an ALJ to consider a claimant's financial interest in an ongoing worker's compensation claim. Leech v. Barnhart, 177 Fed. Appx. 225, 228 (3d Cir. 2006) (affirming ALJ's determination that "a strong element of secondary gain" diminished credibility of claimant's subjective complaints).

AO 72
(Rev. 8/82)

Accordingly, even if the claim of bias properly was before this court, plaintiff could not meet his burden of showing that the ALJ was biased against him in conducting the administrative hearing or in deciding his case.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

Gustave Diamond
United States District Judge

cc: H. Brian Peck, Esq.
The Crossroads Law Firm
198 Canterbury Road
McMurray, PA 15317

Albert Schollaert
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)